Case No. 18-3504, Fidelity and Deposit Company of Maryland v. Internal Revenue Service Oral argument not to exceed 15 minutes per side. Mr. Catterall for the appellant. May it please the court. I'm Arthur Catterall of the Justice Department on behalf of the United States. And if I may, I'd like to reserve four minutes for rebuttal. In holding that the levy notices at issue were ineffective, the district court fundamentally misunderstood the legal inquiry it was required to undertake. The court's opinion makes clear that it viewed the dispositive inquiry as whether Cosmos had an interest in the funds at issue. By my count, it noted that issue 33 times. Counsel, I'm sorry to interrupt you so early, but when I opened this file, the thing that impressed me most was neither party can cite to us a case just like this. There's got to be thousands of surety bonds on thousands of these construction projects every year. I have to think somebody defaults on it. How come this has never come up? Why are you picking on this surety? Have you found the new treasure load for the IRS? We're not picking on this surety. It seems to be pretty unique, wouldn't you agree? Well, let me just say this. It seems like the district court below thought we were saying that Cosmos was entitled to the funds and that Fidelity had no claim to the funds. Have you ever made this claim before to a surety? I'm just not getting it. Why is this case now and never before? You surely file liens against construction companies that are bust. The first thing they do is borrow money from the withholding tax and don't pay it back, so you know you have liens against. What's going on here? This is my guess. I think that these cases typically settle, and that's why you don't have a case exactly on these facts. Again, the reason we're appealing is because the district court just made the wrong inquiry. The question is not whether Cosmos had a claim to those funds. Obviously, it didn't. Those funds relate to payment applications that were submitted to ODOT after Cosmos had assigned its earned and unearned payment rights under the contracts to Fidelity. I'm sorry? So your idea is the assignment is this letter of direction? Correct. How about looking at that? I think it's you know where it is. There's not one word of assignment. There's not one word of conveyance. There's not one word of title in that. In fact, Cosmos directed the money to be sent to Cosmos in care of the Fidelity. Now, how do you get an assignment out of that? Okay, it doesn't matter whether there was an assignment or just from their general rights of subrogation. The point is that we're not saying Cosmos has an interest in the funds. What we're saying is that when those contracts were executed, Cosmos had executory contract rights. Those are property to which the federal tax liens attached. And it surrendered its right to any payments in the future. Absolutely.  You know, this is going to be the case in every single one of these surety cases. You know, from what you say, you don't have to have any papers. You don't have to have anything. Every surety gets stiffed where you have filed a lien against the contractor. All they had to do was file their UCC-1 financing statement in a timely fashion. And they're protected under 6323. So you don't need to show that the letter of direction is an assignment. No. But why did you say it was? Okay, the point being is what we're saying is that we acknowledge that Fidelity has the claim to the funds. Cosmos doesn't. And that's where the district court inquiry was, well, does Cosmos have an interest in these funds? It doesn't matter that Cosmos no longer, you know, it gave up its rights, whether it assigned those rights or whether just by operation of subrogation. It doesn't matter that Cosmos no longer has those rights. The real problem is there isn't enough money to go around. Right. That's one of the problems. Sure. But, and again, you know, exactly how the money gets divvied up, that's the next issue. That's the priority issue. The district court didn't even get to that issue. Well, the district court seemed to have sort of conflated the two issues somehow. Yeah, I found it a little bit hard to follow the argument all the way through. But, again, our point is that when Cosmos executed those contracts, it obtained executory contract rights. Those are clearly property within the meaning of Section 6321, whether you're looking at state law, federal law, that's property and the liens attached to that property. However, those rights made it to Fidelity, whether it's an asset. So the surety, in order to be paid, has to have Cosmos' property right? No. It can't be surety law? No, no. In order to be protected, no, yeah, they do not need an assignment. Subrogation works. They don't need an outright assignment, but they got one, so they got, you know, belt and suspenders. But the point is that however those rights moved from Cosmos to Fidelity, the lien moved with them. And when the performance under the contracts occurred, those executory contract rights or conditional payment rights, we use the term interchangeably, ripened into earned payment rights, receivables. And that's the property with respect to which ODOT is obligated, and that's why the levy works. So why the miraculous discovery by IRS suddenly that this happens in all these surety cases? Or is this so unique that it's the only one ever and ever will be again? What is it? I don't get it. It is a little odd that there's no, neither of you can cite a case directly like this one, which suggests that somehow this is something new that we're confronting here. I do not know why there are no cases like this. Again, I think a lot of times these cases settle. But again, you know. Was there any effort to settle this one? I didn't handle the case below. Okay. So I'm not. But we've got a settlement conference office. I just wondered if it had come through there. Yeah. Oh, did it go through? Our settlement office. I don't recall that it did. Okay. And if I'm wrong, counsel can correct me. I don't recall it going through. Is there any chance we should give the settlement office that's attached to this court a chance to resolve this? We certainly would not object to that, no. Okay. Well, I'll speak with your brother counsel there. All right. But anyway, you know, I understand what you're saying. Boy, this seems novel and everything. But if you just, if you walk through the statutory provisions, and I know that's not easy to do, and the key is in Section 6331, and this is really the crux of the matter. On page 13 of its brief, fidelity erroneously states that Section 6331 provides that a levy is proper only if the taxpayer has a recognized property interest in the funds held by the entity served with the levy. That is wrong. That's not what the statute says. What the statute says, 6331 provides that the IRS may levy not only on property in which the taxpayer holds an interest, but also on any property on which there is a federal tax lien for the payment of the tax. And, again, it's undisputed that the federal tax lien, once it attaches to a taxpayer's property, remains attached to that property in the hands of another. So it follows that property on which there is a federal tax lien, as referenced in Section 6331. So I get back to where I was. This is going to be your position, IRS position, on every single payment that a surety has to make because of a bankruptcy, because of a collapse. All they have to do is protect their interest by filing a UCC-1. They could have done that years ago. That's all they have to do. So everybody else has filed those, I guess, right? I'm sorry. They should. I'm sorry. Go ahead. What does it consist of? The UCC-1. It's a form, and then you attach to it. They had an indemnity agreement with Cosmos that predated all this. It says, in the future, we're going to be your surety, and if we're called upon, we're coming after you. All they had to do was file that, and they would have been protected under the priority provisions in Section 6323. I see. So, again, the focus shouldn't be on whether Cosmos had an interest in the funds. It didn't. But what it did have when it executed these contracts were rights to which the Federal lien attached and remained attached in the hands of Fidelity and attached to the proceeds, which are the receivables. Thank you. May it please the Court. David Olson on behalf of the surety. Judge Norris, let me direct the panel to a case, Western Surety Company v. Brooks. It's cited in our papers. Case is 362F2nd 486 by the Fourth Circuit 50 years ago, 1966. In many cases, the exception proves the rule. Brooks is a prime example of that. In that particular case, the surety tried to overreach. The surety tried to say they issued multiple bonds on different projects. There was one project that was profitable, one that was not profitable. They said that our equitable subrogation goes to the profit on the other job. The Court rejected that. No one appealed. No one objected to getting the money on the projects where there were losses and being reimbursed to the extent of the losses that were incurred. They also cited in that case the case from 1926 in Ohio, the Southern Surety v. Schlesinger case, which upheld the concept of equitable subrogation. Did you say you cited that in your brief? I don't find it. I believe it is cited, Your Honor, in the briefs, the Brooks case. The Brooks case? And what was the caption on it again? Western Casualty and Surety Company v. Brooks. I don't see it in your case. It's not. All right. It's not in the table of authorities. I'm sorry, Your Honor. We cite it in the court below. But the Brooks case, I believe, is the one. Maybe you better give us the citation again. I couldn't. 362 Federal 2nd, 486, the Fourth Circuit, 1966. Does this letter of direction, is that a form required by ODOT? No. That is not a form that is required by ODOT. That is a very standard practice in surety law to send to the obligee saying, please don't send any more money to the principal. That's a very common practice. Kind of covering your fanny, right? I mean, I understand that. Yes, and unfortunately in this case, Judge Norris, there was an occasion in which they didn't do that. I had to file a motion to hold Cosmos in contempt because they misdirected the money. The other case we have here is that we have a state receivership. That state receivership, appointed under Ohio law, provided that all the assets were transferred to the receiver. That happened on October 2, 2015. So at that time, Cosmos had, first of all, one bank had swept the account, so they had no cash. And after the appointment of the receiver, they had no assets. They had no access to capital. They could not perform. The surety performed. My opposing counsel also said we could have solved this by filing the UCC. The problem is the UCC does not apply to equitable subrogation. I would direct the court to the case of Trans-American Insurance v. Barnett, where it says the overwhelming and essentially unanimous post-UCC decisions, federal as well as state, have held that surety's equitable subrogation is not a consensual security interest. No UCC filing is necessary to perfect the surety's interest. Judge Norris, as you said when you asked, if we followed the IRS's position, a surety could never exercise its equitable subrogation rights because that future right to earn money, which is, again, a UCC right, would always apply. We could never exercise our equitable subrogation rights. I also would direct the court's attention to Aetna Casualty and Surety v. United States, 845F2nd971, a 1988 case from the Federal Circuit. In that case, it says there is no need for a declaration of default in that particular case. And that's where you can become the performing surety, and the performing surety has equitable subrogation rights. But isn't the problem for you that the Supreme Court has pretty clearly told us that we don't look to Ohio law to establish the property right? We look for what sticks are in the bundle, but which ones are property? That's a question of federal law? I believe, Your Honor, it says that you look first to state law to determine what is in the bundle. What's in the bundle? And in this particular case, the trial court did look to what's in the bundle and determined that this stick wasn't in the bundle. Because of equitable subrogation, the surety has the right to receive those funds. That's what the court said. Once you determine that there's a stick in the bundle, then you go to federal law. This stick was never in the bundle. We never got to that. But it was in the bundle. I mean, the IRS would say it was in the bundle before your rights became subrogated. That would go to Judge Norris's position that if that was the law, and my position is that that's not the law. I understand. That would always trump the surety. Yeah. And that should not. That is not the law. Suretyship has been the law for centuries. It was in the Old Testament. It's in the New Testament. It's in the Magna Carta. And this is, as our amicus filer said, this is one of the principles of suretyship, that the surety has the right to look to the contract funds to reimburse it when it has incurred a loss. That's exactly what happened in this situation. Judge Daughtry, let me talk about the settlement. Yes, we tried to settle this case on several occasions. First, as the motions were pending in the trial court, we tried to settle the case. When the case was filed in this court, we again went to the services provided by this court and tried to settle the case. We were unsuccessful of doing so. If you want me to go into the details. No, no. But there was an effort with this court and with services to try to settle this. It would be your position that a second try wouldn't be fruitful. Is that what you're saying? I don't believe at this stage it would be, Your Honor. Okay. Because there were efforts made. Those efforts were unsuccessful of doing that. But I take it you were not dealing with Mr. Catterall. I was not. There was a prior counsel that was involved first at the trial level, then at the first stages of the appellate level, and Mr. Catterall is now the person providing the argument. But he was not involved at an earlier stage. Okay. But, again, the Brooks case, I believe, and there are other cases in Ohio that also talk about the idea of equitable subrogation. I have cases going back to 1868 talking about in Ohio, of the idea of the Ohio Supreme Court recognized the concept of equitable subrogation, a benefit for the sureties, because of what the surety does is facilitate commerce. That's what a surety does in this situation. Yes. So I completely understand. I get your position, and I get how this is unique. Is there anything a little odd about saying that an equitable interest creates a property right? A property right is a legal right. Your Honor, I would not— Just help me think through it. I understand. The rights of the surety were created at the time when the surety bond, the three-sided surety bond, was executed. And the surety, if it is called upon to perform, as happened in this case, you do not need a formal declaration of default, and there's adequate law that says that. The surety is a performing surety, and the status of the parties determines their rights. The surety is a performing surety. Cosmos is merely the taxpayer. The IRS, in this context, is merely a general creditor. This isn't a federal project. On a federal project, they may have had rights of set-off as both the owner and the taxing authority. That's not the case here. They are only a general creditor. So they only have the rights as a general creditor. That's when they try to bring in the UCC to try to say that the UCC should somehow apply. But equitable subrogation is not a creature of the UCC. It is a creature of equity. Well, I think one of the questions that Judge Larson had was whether the tax liens attached prior to the time that the notices started coming in that there was money due from Cosmos to the people working there and the materials that were used there and so forth. Is that the case? I would say not, Your Honor. Why not? Because equity, because of the surety bond, the surety's right to receive the money arises when the bond was issued. But the lien arises when the assessment is made, and that was in April the 14th of 2014. And the subcontractors and suppliers came forward in Ohio courts in August and September of 2015. And there were claims even before then, Your Honor, when there were various mechanics liens and the Davis-Bacon nonpayments. They were before that time. Well, I don't have that on my timeline, but it very much looks like the IRS assessment and therefore the resulting lien was predated the time that the beginning of the financial troubles. That would go back to what Judge Norris was saying. If that is the law, and I suggest obviously that it's not, the surety would never have the opportunity to assert its equitable subrogation rights because that property right – I'm sorry, Your Honor. It could have been, if there had been enough money in the pot, the IRS could have gotten its money and there would have presumably been more money coming in as Cosmos finished the job on behalf of Fidelity. Is that not true? Well, Cosmos did not perform on behalf of Fidelity. We did not prop up Cosmos. We established a separate fund, separate bank account in Georgia, and Cosmos, the taxpayer, had no control over those funds. Those funds were deposited by the surety and used to perform the work. Well, I understand that, but my point was there was still the possibility of money coming in as the job got performed. Is that not correct? That is correct. And that generation of the fund was solely, solely by the actions of the surety. Cosmos did nothing and could not do anything because they had no assets, they had no access to capital, and they had no money. So Cosmos could not generate the fund. One way that I look at this is on a property issue. Could I demand payment? Could I demand payment? Cosmos could never demand payment because they never earned the money. Once the surety got involved, what the surety was doing was doing the field work. They submitted the applications for payment, and all of those applications were for actions taken in the field after Cosmos was placed in the receivership and could not perform. That's when the surety took over, and the surety and the surety alone performed the actions to generate the funds. Cosmos did none of that. There were funds between those times which had been withheld, and once the surety started to perform, ODOT started, once the pump was primed, started to release some of the funds, some of the Davis-Bacon funds, some of the lien funds. But the funds that are at issue here. Well, I understood opposing counsel to say that if we were to reverse this and remand, there would still be the issue of who takes priority over what's there. Is that correct? That's the question that hasn't been answered. I believe the ‑‑ I would submit that the district court did answer the question, that the actions of the surety alone generated the funds, and they're entitled to the money. Again, the IRS is only a general creditor. They're not a secured creditor. The secured creditor in this case, Premier Bank, gave up that. The surety paid the mechanics land. That's correct. Bacon, Davis. Davis-Bacon Act. We paid all of those, and we paid the cost to do the future performance. Equitable subrogation is not controlled by the UCC. Equitable subrogation is a valuable right of a surety, and we're entitled to the funds, and we're entitled to have the trial court's decision affirmed. Thank you very much. Does the UCC have some role here or not? It does, and we explained this on page 16 of our reply brief. Counsel is right. The UCC doesn't have application to equitable subrogation, to its equitable lien, but Fidelity can take two paths to claim this money. One is the equitable subrogation, and the other is its legal security interest that it obtained through this indemnity agreement, and that's how it protects itself under Section 6323, I believe it's C4, deals with obligatory disbursement agreements, which is what this is. So that's one way they can protect themselves. Now, as far as the equitable side is, that is outside of 6323, and the rule that applies is the common law, first in time, first in right. And it's clear that the equitable lien does not become co-ate until the surety starts spending money, and that happened, as you noted, Judge Daughtry, after the liens had attached to Cosmos' executory contract rights. The tax liens. I'm sorry? The tax liens, yes. The tax liens. You've got equitable liens and tax liens, so, yeah. Right. So whatever equitable lien they have would lose under the first in time, first in right rule. And, again, and if, you know, if you know what bothers me about this whole pack of yours? Just simple quasi-contract law says they did the work. ODOT owes them. I don't care what fund it comes out of. ODOT owes them a reimbursement for what they paid and gave value to ODOT. The IRS has a superior claim. We're not saying that they're not in ---- And you never performed one ounce of work after the surety came in. I know you say, well, their name's in there somewhere, but it's ridiculous. Oh, no. And that's an important point about, you know, the contracts. If the contracts had gone away, if, you know, if ---- No, the contracts were important because they say you don't get paid if you don't do the work. And you didn't do the work. But that's just not the point. Oh, okay. The point is there is a federal tax lien that attached to Cosmos' conditions. To its right, which is extinguished if it doesn't do any work. It doesn't have a right to payment. Its right moved to fidelity. But it was attached with a lien. I don't know how else to ---- I mean, that's just the law. And, I mean, nobody is saying that fidelity can't exercise its subrogation rights. Again, the question is who has priority? Why should, you know, why should the surety ---- Why is the surety's interest more important than the public fisc? I mean, is there any more important, you know, first and right interest of the government than collecting taxes? So, again, it's not a question that ---- Just out of curiosity, let's say the money goes to the IRS that had not gone to pay to go into the employees for the employees' benefits. Okay? The employees had expectations of receiving certain tax benefits and other things, and they didn't get those. Now, the money is hypothetically with the IRS. Does the IRS then reimburse the employees for what they didn't get? I don't think that's how it works. That's what I'm just trying to figure out. Really, and that's a question of who takes priority between the Department of Labor and the Department of Treasury. Well, the ---- Who would admit that's a problem, that there's a question about that? There is a question. Or a general decision. There is a question as to how the priority of the Department of Labor and the Department of Treasury plays out. Sure. But the withholding taxes that should have been paid in weren't paid in. That is correct. And the employees just lose? Is that it? Well, I mean, those taxes, those are employment taxes. Those aren't benefits to them. I mean, those are, you know, those are monies that are supposed to go to the IRS, not to the employees. Okay. They go into the trust fund, but it isn't really a trust fund. Right. So it's not attached to any individual account. Right. Correct. Okay. But those are separate from, you know, the DOL claims. Any other questions? No. Thank you. Thank you. Thank you both for your arguments.